Ruth HAYWORTH, Executrix of the
Estate of Daniel Hayworth,
Deceased, Appellant,

v.

SCHILLI LEASING, INC.; Shilli Trans-
portation Service, Inc.; Schilli Motor
Lines, Inc.; Fruehauf Corporation and
Guepel Demars, Inc., Appellees.

No. 04A03–9308–CV–262.

Court of Appeals of Indiana,
Third District.

Dec. 20, 1994.

Thomas F. Macke, Blachly, Tabor, Gozik & Hartman, Valparaiso, for appellant.

John W. Barce, Barce, Ryan & Howard, Fowler, Edward E. Rundell, Gold, Weems, Bruser, Sues & Rundell, Alexandria, LA, for appellees.

STATON, Judge.

Ruth Hayworth ("Hayworth") filed a wrongful death action against Fruehauf Corporation ("Fruehauf")[1] after her husband was killed in a work-related accident involving a dump truck manufactured by Fruehauf. Pursuant to Ind.Appellate Rule 4(B)(6), she brings this interlocutory appeal from the trial court's order enjoining the testimony of her expert witness. Hayworth raises three issues for our review, which we consolidate into two and restate as follows:

 I. Whether Fruehauf's motion for injunctive relief is barred by collateral estoppel.

 II. Whether the trial court abused its discretion by enjoining the expert witness retained by Hayworth from participating in the litigation.

The facts most favorable to the trial court's order indicate that on May 9, 1988, Daniel Hayworth was killed in an accident involving a dump truck manufactured by Fruehauf. As executrix of his estate, Ruth Hayworth filed this wrongful death action against Fruehauf. During the discovery process, Hayworth hired engineer George Allan Hagelthorn as an expert witness. Hagelthorn had been previously employed by Fruehauf as the chief engineer in various departments, most recently serving as Fruehauf's Manager of Reliability.

Upon discovering that Hagelthorn intended to testify on Hayworth's behalf, Fruehauf filed a motion to enjoin Hagelthorn from participating in the litigation. Fruehauf based its motion on the attorney-client privilege and the work product doctrine.[2] The trial court granted Fruehauf's motion and enjoined Hagelthorn's testimony. On Hayworth's motion, the trial court certified its order as interlocutory and this court accepted Hayworth's petition pursuant to App.R. 4(B)(6).

### I.

### *Collateral Estoppel*

Relevant to Hayworth's first allegation of error is a decision by a Michigan county circuit court denying Fruehauf's motion for a preliminary injunction. Fruehauf's motion filed in Michigan sought to enjoin Hagelthorn from participating in any litigation brought against Fruehauf. Hayworth contends that the Michigan court's decision bars Fruehauf from raising the issue of Hagelthorn's testimony in the instant litiga-

---

**1.** Also named in her lawsuit were Schilli Leasing, Inc., Schilli Transportation Service, Inc., Schilli Motor Lines, Inc. and Geupel DeMars, Inc. Hayworth and Schilli reached a settlement agreement; Geupel DeMars' motion for summary judgment was granted as to all of Hayworth's claims against it. As a result, Fruehauf is the only remaining defendant for purposes of this appeal.

**2.** Because we conclude that Hagelthorn's participation as Hayworth's expert in this litigation is barred by attorney-client privilege, it is unnecessary to reach the issue of the attorney work product doctrine.

tion. Specifically, Hayworth contends that Fruehauf's motion is barred by offensive collateral estoppel, which occurs when a " 'plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party.' " *Tofany v. NBS Imaging Systems, Inc.* (1993), Ind., 616 N.E.2d 1034, 1037, (quoting *Parklane Hosiery Co. v. Shore* (1979), 439 U.S. 322, 326, n. 4, 99 S.Ct. 645, 649, n. 4, 58 L.Ed.2d 552).

 When determining whether offensive collateral estoppel may be asserted in an action, the trial court partakes in a two-step process, considering: 1) whether the party in the prior action had a full and fair opportunity to litigate the issue; and 2) whether it is otherwise unfair to apply collateral estoppel given the particular facts of the case. *Tofany, supra* at 1038. Additionally, in determining whether collateral estoppel may be used offensively, the court must consider whether the plaintiff could have easily joined in the first action, and whether the application of collateral estoppel would be unfair to the defendant. *Id.* The trial court's decision to disallow the offensive use of collateral estoppel will be reversed only upon a showing of abuse of discretion. *Id.* at 1039.

The record before us supports the trial court's conclusion that offensive collateral estoppel is inapplicable to this case. Although both the Michigan litigation and the case at bar involve the testimony of Hagelthorn in actions against Fruehauf, the issue is clearly not the same. The Michigan action sought to enjoin Hagelthorn from participating in any case in which Fruehauf was a defendant, regardless of the nature of the case or Hagelthorn's prior involvement in the particular issues raised. The case at bar seeks to enjoin Hagelthorn's testimony in a specific instance: in a case involving the safety of a Fruehauf dump truck, an area for which Hagelthorn had significant responsibility while employed at Fruehauf.

This difference is significant, especially in light of the fact that injunctive relief is at issue. The balance of harms and risks of prejudice to the parties are key factors in the trial court's decision whether to grant or deny injunctive relief. *See T.H. Landfill v. Miami County Solid Waste District* (1994), Ind.App., 628 N.E.2d 1237, 1238. Because the scope of the injunctive relief sought plays a significant role in determining the balance of harms to the parties, the issue in the case at bar is sufficiently distinguishable from the Michigan action to preclude the application of collateral estoppel.

## II.

### *Attorney–Client Privilege*

 It is well established that communications between a client and his attorney, for the purpose of obtaining advice regarding the client's rights and liabilities, are privileged and thus protected from judicially compelled disclosure. *See* IND.CODE § 34–1–14–5 (1993); *Canfield v. Sandock* (1990), Ind., 563 N.E.2d 526, *reh. denied; Brown v. State* (1983), Ind.App., 448 N.E.2d 10, 13–14. This privilege extends to communications between an agent acting on behalf of legal counsel and the client, provided that the communication at issue involves the same subject matter about which the attorney was consulted and the agent was retained by the attorney to assist him in rendering legal advice on the client's behalf. *Brown, supra; Huffstutler, infra* 61 Ohio St.3d at 345–47, 575 N.E.2d at 119.

 Hayworth argues that the trial court abused its discretion in enjoining Hagelthorn's testimony based on attorney-client privilege.[3] The grant or denial of an injunction is within the sound discretion of the trial court. On appeal, we will reverse only where the evidence, viewed most favorably to the trial court's decision, leads to a

---

**3.** Alternatively, Hayworth argues that Fruehauf has waived attorney-client privilege by utilizing Hagelthorn as an expert witness in unrelated litigation. Hayworth incorrectly relies on *Brown, infra,* to support this proposition. In *Brown,* our supreme court concluded that a defendant could not seek admission of privileged communications during one portion of a criminal proceeding, and then later object to disclosure of the same information when it was sought by the State. *Id.* at 14–15. Because the instant case involves unrelated proceedings and an unrelated party, the application of waiver adopted in *Brown* is inapposite.

conclusion directly opposite to the conclusions of the trial court. *Simon v. City of Auburn, Ind. Bd. of Zoning Appeals* (1988), Ind.App., 519 N.E.2d 205, 209. Only when the trial court's action is clearly against the logic and effect of the facts and circumstances before the court will an abuse of discretion be found. *Id.*

According to Hayworth, Hagelthorn did not serve either as an attorney or as an agent of legal counsel during his employment at Fruehauf, rendering the attorney-client privilege inapplicable, and the trial court's injunction was improper. Indiana courts have not yet had occasion to address the applicability of attorney-client privilege in this context; this is an issue of first impression in this jurisdiction.

In support of its argument that the attorney-client privilege should apply under these circumstances, Fruehauf cites *American Motors Corporation v. Huffstutler* (1991), 61 Ohio St.3d 343, 575 N.E.2d 116. In *Huffstutler*, the plaintiff in an action against American Motors Corporation ("AMC") hired Huffstutler to testify as an expert witness in an action involving a rollover of an AMC Jeep. Huffstutler was formerly employed as an engineer for AMC Jeep. During the course of his employment, Huffstutler obtained a law degree and gained admission to the Ohio Bar. Thereafter he became the manager of AMC's Product Design Studies Group, and in his position "worked intimately with the legal department and its privately retained counsel in products liability cases involving AMC Jeep, particularly 'rollover' claims." *Id.* at 344, 575 N.E.2d at 118. Huffstutler's involvement in AMC's products liability cases included recommending expert witnesses and outside counsel, meeting with experts to prepare defense strategy, suggesting lines of testimony and cross examination, and assisting counsel in the preparation of defenses. *Id.* Based on the extent of his involvement in litigation, the Ohio Supreme Court concluded that principles of attorney-client privilege were fully applicable to Huffstutler. The court affirmed the trial court's permanent injunction precluding Huffstutler's participation in any litigation involving AMC.

We find this rationale persuasive, as it is consistent with the well settled principles of attorney-client privilege accepted by the Indiana courts.[4] *See Canfield, supra; Brown, supra.* Thus we conclude that under appropriate circumstances, attorney-client privilege may bar a former employee from testifying as an expert in litigation against his former employer. When faced with this issue, our courts should examine the particular facts and circumstances of each case to determine whether the challenged expert actually served as an agent of legal counsel during his employ.

We must now consider this test in light of the facts and circumstances of this case. The instant record reveals ample evidence that Hagelthorn participated substantially in cases involving the safety and design of Fruehauf's dump trucks. In fact, in his prospectus offering his expert services, Hagelthorn stated that while employed at Fruehauf, he "investigate[d] highway accidents involving Fruehauf trailers and [coordinated Fruehauf's] best means of defense in product liability cases with the Legal Department." Record, p. 483–25; Chosy Deposition Exhibit 5. The record further indicates that Fruehauf's Reliability Department worked closely with the Legal Department and outside counsel on products liability cases, to the extent that Hagelthorn himself drafted correspondence to outside counsel regarding potential legal strategy.[5] Record, p. 483–18; Chosy Deposition Exhibit 3.

4. Hayworth urges us to reject attorney-client privilege in this context based on the general rule that evidentiary privileges are disfavored and subject to narrow construction by the courts. *See Hulett v. State* (1990), Ind.App., 552 N.E.2d 47, 49, *reh. denied.* However, it is equally true that our legislature has recognized a necessity to protect confidential disclosures arising out of certain statutorily protected relationships. *See* I.C. 34–1–14–5. We believe that examining the applicability of attorney-client privilege in this context on a case by case basis, taking into account the extent of the former employees' involvement in the litigation at issue, gives due credence to both concerns.

5. Hayworth argues that the *Huffstutler* rationale is distinguishable because unlike Huffstutler, Hagelthorn is not an attorney. However, Huffstutler's attorney status was not dispositive; it

From this evidence the trial court could reasonably conclude that Hagelthorn's involvement in related litigation during his employment at Fruehauf was sufficient to make him an agent of Fruehauf's legal counsel. Thus the trial court did not abuse its discretion in invoking the attorney-client privilege and enjoining Hagelthorn's participation in this action.

Affirmed.

GARRARD, J., concurs.

SULLIVAN, J., concurs in result with opinion.

SULLIVAN, Judge, concurring in result.

I agree that the scope of the Michigan litigation was more broad than the issue determined in Benton County. For this reason I agree that collateral estoppel does not preclude litigation of the issue here involved. However, I disagree that the use of collateral estoppel can be categorized as *offensive* collateral estoppel here. Hayworth is attempting to use the Michigan judgment as a shield not as a sword. She is not attempting to say that an affirmative fact has been established in the Michigan litigation which binds Fruehauf in Fruehauf's posture as a defendant in this case. Rather, Hayworth is claiming that Fruehauf is the initiator-moving party here because Fruehauf filed the motion to preclude Hayworth from using the witness. Under such situation, Fruehauf had the burden of carrying the affirmative of the issue and was, in the words of *Tofany v. NBS Imaging Systems, Inc.* (1992) 3d Dist.Ind.App., 597 N.E.2d 23, 27 "a plaintiff (or a party similarly situated) ...". Hayworth, then, is using the Michigan judgment as a shield claiming that Fruehauf is estopped from successfully asserting that Hayworth should not be permitted to use the witness. Hayworth seeks to utilize the doctrine of collateral estoppel in a defensive rather than an offensive posture.

In any event, however, I agree that issue preclusion does not apply here because the issues are not the same, nor is the one subsumed in the other.

With regard to the focal issue, the trial court order appealed from reads in pertinent part as follows:

"... Hagelthorn ... is RESTRAINED, ENJOINED, AND PROHIBITED from testifying in this action, either upon deposition or at trial and from consulting or discussing with or disclosing to any party in this action, directly or indirectly, Fruehauf Corporation's trade secrets, confidential information, or matters of Attorney-client privilege or work product." Record at 462.

At first blush, it would appear that the order sweeps more broadly than necessary to safeguard Fruehauf from the divulging of privileged or otherwise protected matters. The order absolutely prohibits Hagelthorn from testifying either by way of deposition [6] or in open court upon any subject or with respect to any matters within his personal knowledge. To be sure, to the extent that Hagelthorn's deposition or testimony at trial might compromise trade secrets, or violate the attorney-client privilege, that testimony might be successfully challenged. However, it may be questioned whether Hayworth should have been precluded from discovering other matters within the knowledge or expertise of Hagelthorn which would not fall within the protected categories. In this regard, it could be argued that Hagelthorn might well be qualified to testify with reference to various areas of his expertise as to general principles of product liability law. Hagelthorn left Fruehauf's employ in 1982, more than six years before the incident in issue. In addition, his expertise was not drawn solely from his Fruehauf employment. He was a member of various professional associ-

was just one of many factors considered by the Ohio Supreme Court in making its determination. The Ohio court considered the nature and extent of Huffstutler's involvement in the litigation at issue. *Id.* at 118.

**6.** Not all depositions are intended to be used as trial testimony. Discovery depositions are very much a recognized and encouraged part of our

pre-trial procedure. Ind.Rules of Trial Procedure, Rule 26. Of course part (C)(7) of the Rule carries protections against disclosure of the type information which Fruehauf here wished to guard. Be that as it may, it would seem that a discovery deposition might appropriately cover unprotected and unprivileged matter.

ations from which he undoubtedly gained independent knowledge. Furthermore, he had operated a trailer engineering consulting service for over ten years prior to this law suit. In this light, it would seem that Hagelthorn's testimony was entitled to be proffered, subject to appropriate objection if it threatened to stray into forbidden areas.

On the other hand, it is quite possible to give emphasis to the obvious practical difficulty in separating Hagelthorn's knowledge and expertise as gained independently from such knowledge and expertise as gained from Fruehauf's trade secrets or from Fruehauf attorney-client communications. In this light, therefore, it was not unreasonable for the trial court to opt for the more protective ruling and to exclude all testimony by Hagelthorn. In instances such as this case, it is not likely that the plaintiff would be unable to find other competent expert witnesses to cover the desired subject matter.

Subject to the caveats expressed herein, I concur.