**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GREGORY A. HARRIS, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 39A05-1205-CR-239 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Ted R. Todd, Judge
Cause No. 39C01-0912-FC-203

**August 13, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Gregory A. Harris was charged with and tried on two counts, rape and sexual misconduct with a minor. The charging information for sexual misconduct with a minor alleged that Harris had "sexual intercourse with a child." A jury acquitted Harris on the rape charge, but hung on the sexual misconduct charge, and the trial court declared a mistrial on that count. The State, seeking to retry Harris on the sexual misconduct charge, filed a motion to amend the charge by adding the language "or deviate sexual conduct." Harris filed a motion to dismiss, arguing that double jeopardy bars a retrial on the sexual misconduct charge. The trial court denied both motions. Harris appealed, and the State cross-appealed. We find that double jeopardy does not bar Harris's retrial on the sexual misconduct charge and that the statute of limitations precludes the State from amending the sexual misconduct charge. Accordingly, we affirm the trial court in all respects.

**Facts and Procedural History**

Harris and his wife moved to Indiana in December 2005. Harris's wife had a younger sister, A.M. On December 25, 2005, members of A.M.'s family and Harris were gathered for Christmas at the Hanover residence of A.M.'s uncle. Harris was eighteen at the time, and A.M. was fourteen. That evening, Harris and A.M. left the uncle's residence together in Harris's car and headed to A.M.'s mother's residence in nearby Madison. On the way, Harris and A.M. stopped at the Madison Walmart and found it to be closed. The aforementioned facts are undisputed by the parties.

On December 23, 2009, the State charged Harris with two counts of sexual

2

misconduct with a minor pursuant to Indiana Code Section 35-42-4-9. Count I alleged "sexual intercourse with a child," and Count II alleged "deviate sexual conduct with a child."[1] Appellant's App. at 20, 21. On January 3, 2011, the State filed a motion to amend the charges, which was granted on January 6, 2011. The new Count I charged Harris with rape as a class B felony. The new Count II charged Harris with sexual misconduct with a minor, specifically "sexual intercourse with a child," the same as the original Count I, a class C felony. *Id.* at 29. The original Count II, which had charged Harris with sexual misconduct with a minor, specifically "deviate sexual conduct with a child," was dismissed.

In September 2011, the case went to trial on the amended charges. At trial, Harris testified that upon discovering that Walmart was closed, he dropped A.M. off at her mother's residence and returned to the uncle's residence the night of December 25, 2005. A.M. testified that Harris parked the vehicle in the Walmart parking lot, exposed his penis, and compelled her to perform oral sex on him. A.M. further testified that Harris then exited his side of the vehicle, entered her side of the vehicle, and engaged in sexual intercourse with her. A.M. testified that she said "No" during the intercourse. Vol. II Tr. at 30. Harris denied that any inappropriate sexual contact occurred between him and A.M.

On September 16, 2011, the jury found Harris not guilty on Count I and was unable to reach a verdict on Count II. The trial court declared a mistrial on Count II. On September

---

[1] Indiana Code Section 35-31.5-2-94 (formerly 35-41-1-9) defines deviate sexual conduct as "an act involving: (1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." Sexual intercourse is defined as "an act that includes any penetration of the female sex organ by the male sex organ." Ind. Code § 35-31.5-2-302 (formerly 35-41-1-26).

20, 2011, the State moved to strike Count I and recaption Count II, sexual misconduct with a minor, as Count I. The State also moved to add the words "or deviate sexual conduct" to the charge. Appellant's App. at 33. The trial court granted the State's request to recaption Count II as Count I, but denied the motion to add the words "or deviate sexual conduct" to the charge. On October 18, 2011, Harris filed a motion to dismiss the sexual misconduct charge on double jeopardy grounds, which was denied.

Harris now appeals the denial of his motion to dismiss, and the State cross-appeals the denial of its motion to amend the charging information. We will state additional facts in our discussion where necessary.

**Discussion and Decision**

*I. Denial of Harris's Motion to Dismiss*

We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Woods v. State*, 980 N.E.2d 439, 442 (Ind. Ct. App. 2012). We will find an abuse of discretion only if the trial court's decision was clearly against the logic and effect of the facts and circumstances. *Id.*

Harris argues that a retrial on the hung charge, sexual misconduct with a minor alleging "sexual intercourse with a child," would violate the double jeopardy provisions of the Indiana Constitution.[2] *See* Ind. Const. Art. I, § 14 ("No person shall be put in jeopardy twice for the same offense."). Harris contends that such a retrial would run afoul of the actual evidence test enunciated by our supreme court in *Richardson v. State*, 717 N.E.2d 32

---

[2] Harris makes no federal double jeopardy claim.

4

(Ind. 1999). In that case, the court analyzed "the history of the Indiana Constitution's Double Jeopardy Clause to ascertain and articulate a single comprehensive rule synthesizing and superseding previous formulations and exceptions." *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002) (citing and clarifying *Richardson*). The *Richardson* court developed two tests for double jeopardy analysis, the statutory elements test and the actual evidence test. 717 N.E.2d at 50, 52. In the statutory elements test, "the reviewing court must determine whether the elements of one of the challenged offenses could, hypothetically, be established by evidence that does not also establish the essential elements of the other charged offense." *Id*. at 50.[3]

Harris claims a violation of the Indiana double jeopardy clause under the actual evidence test. To show that two offenses constitute the same offense under the actual evidence test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 52-53. Harris argues that the same evidentiary facts, those concerning one act of nonconsensual sexual intercourse, were used to try him for both charges, rape and sexual misconduct with a minor (alleging sexual intercourse with a child), and because he was acquitted of rape, retrial on sexual misconduct with a minor (alleging sexual intercourse with a child) would violate his double jeopardy rights under the Indiana Constitution.

---

[3] The statutory elements test is the same as the analysis required by federal double jeopardy jurisprudence. *See Brown v. State,* 912 N.E.2d 881, 896 (Ind. Ct. App. 2009) (explaining that statutory elements test is identical to standard set forth in *Blockburger v. United States,* 284 U.S. 299, 301 (1932)), *trans. denied*.

5

We disagree. The actual evidence test does not apply to acquittals, mistrials, or the present situation of an acquittal and mistrial combination. The plain language from *Richardson* states that the actual evidence test applies *only to convictions*. *See id*. at 49-50 ("[W]e therefore conclude and hold that two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence **used to convict**, the essential elements of one challenged offense also establish the essential elements of another challenged offense.") (bold emphasis added).

With convictions, a jury or fact finder has clearly communicated by its decision that it has found the elements of the charged crimes to have been established via the presented evidentiary facts. Thus, a court can perform the actual evidence test only on convictions because only convictions lend themselves to examining the "reasonable possibility that the evidentiary facts used … to *establish* the essential elements of one offense may also have been used to *establish* the essential elements of a second challenged offense" and allow a court to "identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective." *Spivey*, 761 N.E.2d at 832, 833 (expounding on actual evidence test) (emphasis added). The actual evidence test presupposes finality and retroactively analyzes which evidentiary facts were used by a jury for convictions. Naturally, such an analysis cannot be performed on acquittals or mistrials, due to the lack of finality and the lack of communication from a jury as to how it arrived at an acquittal or a mistrial. Indeed, the actual evidence test has never been applied to a situation involving acquittals,

6

mistrials, or a combination of both.[4]

Since this case does not involve multiple convictions, we cannot analyze evidentiary facts pursuant to the actual evidence test. Rather, we can determine which issues the State is precluded from retrying by applying collateral estoppel. "Collateral estoppel is not the same as double jeopardy, but rather it is embodied within the protection against double jeopardy." *Segovia v. State,* 666 N.E.2d 105, 107 (Ind. Ct. App. 1996). Collateral estoppel "requires that when the State has received an adverse decision of a critical issue of fact in a trial, that adverse decision prevents later relitigation of the same issue in a later prosecution." *Townsend v. State*, 632 N.E.2d 727, 731 (Ind. 1994).

We reached a similar conclusion in *Buggs v. State*, 844 N.E.2d 195 (Ind. Ct. App. 2006), *trans. denied*. In *Buggs,* we determined that the actual evidence test does not apply to acquittals, and in the unique situation of split verdicts involving acquittals and mistrials, the doctrine of collateral estoppel is better suited for adjudication. The *Buggs* court relied on *Griffin v. State,* 717 N.E.2d 73 (Ind. 1999), for its similar facts and principles. *Id.* In *Griffin,* a jury acquitted the defendant of felony murder by robbery and hung on charges of robbery and conspiracy to commit robbery. The State retried Griffin on the hung charges and the jury found him guilty of both. On appeal, Griffin contended that retrial on the robbery charge violated the federal double jeopardy clause because the robbery was the underlying offense

---

[4] Harris analogizes from a line of cases stating that multiple convictions for rape and child molestation arising from one act of sexual intercourse violate Indiana's double jeopardy clause. *See*, *e.g.*, *Roberts v. State*, 712 N.E.2d 23, 31 (Ind. Ct. App. 1999) (holding that convictions for rape and child molestation violated defendant's double jeopardy rights because both offenses served to punish the defendant for one act of nonconsensual sexual intercourse), *trans. denied*. We do not find these cited authorities persuasive because they involved multiple convictions, not combinations of acquittals and mistrials.

for his felony murder charge, so an acquittal on one charge was, in essence, an acquittal on both. Our supreme court determined that the felony murder by robbery charge and the robbery charge required proof of the same facts and constituted the "same offense." Id. at 78. However, the court noted, while applying collateral estoppel, that in order to acquit Griffin of felony murder by robbery, the jury did not necessarily have to conclude that the State failed to prove the underlying felony of robbery. Id. at 83. The court held that collateral estoppel did not bar Griffin's retrial. Id. at 87. Furthermore, the court explained that a hung jury is neither the equivalent of an acquittal, nor something that terminates jeopardy, but rather that "the concept of continuing jeopardy applies to a mistrial caused by a deadlocked jury." Id. at 79; see also Young v. State, 482 N.E.2d 246, 249 (Ind. 1985) ("It is well settled that a hung jury operates to discharge the operation of double jeopardy and a new trial is not barred in such a situation."), cert. denied (2000).

In Buggs, the defendant committed one act of murder and was charged with both murder and felony murder for the death of one victim. 844 N.E.2d at 198. The jury acquitted Buggs of felony murder and hung on the murder charge. Buggs was retried on the murder charge and was convicted. Id. On appeal, Buggs argued that his retrial should have been barred by both state and federal double jeopardy clauses. Because the felony murder and murder charges were from the same offense, Buggs argued that his retrial violated the actual evidence test per Indiana's double jeopardy jurisprudence. The Buggs court noted that no Indiana appellate court had applied the actual evidence test where there was an acquittal on one charge and retrial on another charge after a hung jury. Id. Therefore, the Buggs court

8

concluded that the continuing jeopardy and collateral estoppel doctrines in accordance with *Griffin* are best suited in such circumstances.

To apply the doctrine of collateral estoppel, the court must engage in a two-step analysis as articulated by the *Buggs* court:

> (1) determine what the first judgment decided and (2) examine how that determination bears on the second case. Determining what the first judgment decided generally involves an examination of the record of the prior proceedings including the pleadings, evidence, charge, and any other relevant matters. Then, the court must decide whether a reasonable jury could have based its verdict upon any factor other than the factor of which the defendant seeks to foreclose consideration. If the jury could have based its decision on another factor, collateral estoppel does not bar relitigation.

844 N.E.2d at 202 (citing *Segovia,* 666 N.E.2d at 107).

Applying collateral estoppel to this case, we find that acquittal on the rape charge does not preclude relitigation of the sexual misconduct with a minor charge. Harris was charged with rape as a class B felony pursuant to Indiana Code Section 35-42-4-1(a), which states:

> [A] person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when: (1) the other person is compelled by force or imminent threat of force; (2) the other person is unaware that the sexual intercourse is occurring; or (3) the other person is so mentally disabled or deficient that consent to sexual intercourse cannot be given; commits rape, a Class B felony.

Harris was also charged with sexual misconduct with a minor as a class C felony pursuant to Indiana Code Section 35-42-4-9(a), which states:

> A person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits sexual misconduct with a minor, a Class C felony.

The rape charge alleged that A.M. was compelled to have sexual intercourse with

9

Harris "by force or imminent threat of force." Appellant's App. at 29. The sexual misconduct with a minor charge alleged that Harris "did perform or submit to sexual intercourse with a child." *Id.* The evidence concerning force was not overwhelming. A.M. testified that she did not know what to do, that she was scared, and felt paralyzed. Vol. II Tr. at 31-32. The jury may have acquitted Harris of rape because it found a lack of force; the acquittal does not necessarily mean that the jury found that sexual intercourse did not occur. Had it done so, the jury would have acquitted Harris on the sexual misconduct charge. Therefore, we cannot say that retrial for sexual misconduct with a minor would require proof of a factor necessarily found in Harris's favor by virtue of the rape acquittal. Consequently, collateral estoppel does not bar relitigation of whether Harris had sexual intercourse with A.M.

The jeopardy which attached to the sexual misconduct with a minor charge did not terminate due to juror deadlock, but continues, just as it would have if Harris was originally charged and tried solely on that charge. *Griffin*, 717 N.E.2d at 78. Double jeopardy does not preclude the State from completing its initial prosecution, nor is the State prohibited from pursuing relitigation on principles of collateral estoppel. As such, we conclude that the trial court did not abuse its discretion in denying Harris's motion to dismiss.

### II. Denial of State's Motion to Amend Charging Information

The State argues that the trial court erred in denying the State's motion to amend the charging information to add "or deviate sexual conduct." In their briefs, the parties have characterized the matter as an issue of the trial court's discretion or abuse thereof,

10

prosecutorial vindictiveness, double jeopardy, and the statute of limitations. We find the dispositive issue to be the statute of limitations.

The period of limitations begins with the "commission of the offense." Ind. Code § 35-41-4-2(a)(1). The alleged crime occurred on December 25, 2005. A class C felony has a period of limitations of five years. *Id.* Thus, the period of limitations regarding the alleged deviate sexual conduct ended on December 25, 2010. After the first trial, the State moved to amend its remaining count against Harris by adding "or deviate sexual conduct" on September 20, 2011, nearly a year after the period of limitations for the alleged deviate sexual conduct expired.

The proposed amendment here is not merely a correction of information or an alternate theory of culpability, as the State suggests. Appellee's Br. at 9. Rather, the proposed amendment constitutes a matter of substance and includes a new and additional offense. Thus the amendment carries the weight and practical effect of a new or refiled charge. Just as the State would be barred from bringing a new or refiled charge of deviate sexual conduct, it is barred from bringing the charge through an amendment. The statute of limitations cannot be circumvented because of the procedural availability of amending informations or the happenstance of mistrial.

11

The State's motion to amend by adding "or deviate sexual conduct" to the charge is untimely.[5] As such, we conclude that the trial court did not abuse its discretion in denying the State's motion to amend the information prior to retrial on the hung count.

Affirmed.

ROBB, C.J., and FRIEDLANDER, J., concur.

---

[5] We note that had the amendment been allowed by the trial court, it would be subject to a motion to dismiss from Harris. *See Greichunos v. State*, 457 N.E.2d 615, 617 (Ind. Ct. App. 1983) ("An information alleging a time outside the statute of limitations which does not allege facts sufficient to constitute an exception to the statute is subject to a motion to dismiss.").