

**FILED**
Nov 04 2013, 6:43 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

GREGORY A. HARRIS,                          )
                                            )
    Appellant-Defendant,                    )
                                            )
        vs.                              )    No. 39A05-1205-CR-239
                                            )
STATE OF INDIANA,                           )
                                            )
    Appellee-Plaintiff.                     )

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Ted R. Todd, Judge
Cause No. 39C01-0912-FC-203

**November 4, 2013**

**OPINION ON REHEARING - FOR PUBLICATION**

**CRONE, Judge**

Both Gregory A. Harris and the State have petitioned for rehearing of our opinion in *Harris v. State*, 992 N.E.2d 887 (Ind. Ct. App. 2013), in which we held that (1) Harris's acquittal on a rape charge did not preclude relitigation of a hung charge of sexual misconduct with a minor for the same act of sexual intercourse and (2) the State could not amend the charging information to add "or deviate sexual conduct" to the sexual misconduct charge. We grant rehearing for the limited purpose of addressing a subsequent decision by the Indiana Supreme Court on the issue of double jeopardy but affirm our opinion in all other respects.

Our original opinion includes the following facts relevant to both petitions for rehearing:

> Harris and his wife moved to Indiana in December 2005. Harris's wife had a younger sister, A.M. On December 25, 2005, members of A.M.'s family and Harris were gathered for Christmas at the Hanover residence of A.M.'s uncle. Harris was eighteen at the time, and A.M. was fourteen. That evening, Harris and A.M. left the uncle's residence together in Harris's car and headed to A.M.'s mother's residence in nearby Madison. On the way, Harris and A.M. stopped at the Madison Walmart and found it to be closed. The aforementioned facts are undisputed by the parties.
>
> On December 23, 2009, the State charged Harris with two counts of sexual misconduct with a minor pursuant to Indiana Code Section 35-42-4-9. Count I alleged "sexual intercourse with a child," and Count II alleged "deviate sexual conduct with a child." On January 3, 2011, the State filed a motion to amend the charges, which was granted on January 6, 2011. The new Count I charged Harris with rape as a class B felony. The new Count II charged Harris with sexual misconduct with a minor, specifically "sexual intercourse with a child," the same as the original Count I, a class C felony. The original Count II, which had charged Harris with sexual misconduct with a minor, specifically "deviate sexual conduct with a child," was dismissed.
>
> In September 2011, the case went to trial on the amended charges. At trial, Harris testified that upon discovering that Walmart was closed, he

2

dropped A.M. off at her mother's residence and returned to the uncle's residence the night of December 25, 2005. A.M. testified that Harris parked the vehicle in the Walmart parking lot, exposed his penis, and compelled her to perform oral sex on him. A.M. further testified that Harris then exited his side of the vehicle, entered her side of the vehicle, and engaged in sexual intercourse with her. A.M. testified that she said "No" during the intercourse. Harris denied that any inappropriate sexual contact occurred between him and A.M.

On September 16, 2011, the jury found Harris not guilty on Count I and was unable to reach a verdict on Count II. The trial court declared a mistrial on Count II. On September 20, 2011, the State moved to strike Count I and recaption Count II, sexual misconduct with a minor, as Count I. The State also moved to add the words "or deviate sexual conduct" to the charge. The trial court granted the State's request to recaption Count II as Count I, but denied the motion to add the words "or deviate sexual conduct" to the charge. On October 18, 2011, Harris filed a motion to dismiss the sexual misconduct charge on double jeopardy grounds, which was denied.

*Id*. at 889-90 (footnote and citations to appendix and transcript omitted).

### *I. Harris's Petition for Rehearing*

Harris appealed the trial court's denial of his motion to dismiss, arguing that "a retrial on the hung charge, sexual misconduct with a minor alleging 'sexual intercourse with a child,' would violate the double jeopardy provisions of the Indiana Constitution." *Id*. at 890. He asserted that "such a retrial would run afoul of the actual evidence test enunciated by our supreme court in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999)." *Id*. We declined to use the actual evidence test, finding that it did not apply (and indeed had never been applied) to "acquittals, mistrials, or the present situation of an acquittal and mistrial combination." *Id*. at 891. Instead, relying on *Buggs v. State*, 844 N.E.2d 195 (Ind. Ct. App. 2006), *trans. denied*, we applied the doctrine of collateral estoppel and made the following determination:

3

[A]cquittal on the rape charge does not preclude relitigation of the sexual misconduct with a minor charge. Harris was charged with rape as a class B felony pursuant to Indiana Code Section 35-42-4-1(a), which states:

> [A] person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when: (1) the other person is compelled by force or imminent threat of force; (2) the other person is unaware that the sexual intercourse is occurring; or (3) the other person is so mentally disabled or deficient that consent to sexual intercourse cannot be given; commits rape, a Class B felony.

Harris was also charged with sexual misconduct with a minor as a class C felony pursuant to Indiana Code Section 35-42-4-9(a), which states:

> A person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits sexual misconduct with a minor, a Class C felony.

The rape charge alleged that A.M. was compelled to have sexual intercourse with Harris "by force or imminent threat of force." The sexual misconduct with a minor charge alleged that Harris "did perform or submit to sexual intercourse with a child." The evidence concerning force was not overwhelming. A.M. testified that she did not know what to do, that she was scared, and felt paralyzed. The jury may have acquitted Harris of rape because it found a lack of force; the acquittal does not necessarily mean that the jury found that sexual intercourse did not occur. Had it done so, the jury would have acquitted Harris on the sexual misconduct charge. Therefore, we cannot say that retrial for sexual misconduct with a minor would require proof of a factor necessarily found in Harris's favor by virtue of the rape acquittal. Consequently, collateral estoppel does not bar relitigation of whether Harris had sexual intercourse with A.M.

The jeopardy which attached to the sexual misconduct with a minor charge did not terminate due to juror deadlock, but continues, just as it would have if Harris was originally charged and tried solely on that charge. [*Griffin v. State*, 717 N.E.2d 73, 78 (Ind. 1999)]. Double jeopardy does not preclude the State from completing its initial prosecution, nor is the State prohibited from pursuing relitigation on principles of collateral estoppel.

4

*Id*. at 893 (citations to appendix and transcript omitted).

Fifteen days after we issued our opinion in *Harris*, our supreme court decided *Garrett v. State*, 992 N.E.2d 710 (Ind. 2013). In that case, Garrett was charged with two counts of class A felony rape, class C felony criminal confinement, class B felony criminal confinement, and class B felony criminal deviate conduct based on an assault involving a single victim. A jury found him not guilty on one rape count, the class C felony criminal confinement count, and the criminal deviate conduct count. The jury deadlocked on the two remaining counts, which were retried to the bench. The trial court found Garrett guilty of class B felony rape but not guilty of criminal confinement.

On direct appeal, Garrett unsuccessfully challenged the admissibility of his statements to the police and the sufficiency of the evidence. In a petition for post-conviction relief, he alleged that he

> was denied the effective assistance of trial counsel because, prior to retrial, counsel failed to object and/or move for a dismissal of the rape charge on federal and state double jeopardy grounds. The petition also alleged that appellate counsel rendered ineffective assistance for failing to raise the double jeopardy issues on direct appeal.

*Id*. at 718. The post-conviction court denied his petition.

> Garrett appealed raising the same claims he raised before the post-conviction court. The Court of Appeals rejected Garrett's federal double jeopardy claim. As for Garrett's state double jeopardy claim the Court of Appeals concluded "the actual evidence test [a component of this State's double jeopardy analysis] does not apply to this case." *Garrett v. State*, 965 N.E.2d 115, 122 (Ind. Ct. App. 2012). Instead, applying the doctrine of collateral estoppel the Court of Appeals affirmed the judgment of the post-conviction court.

*Id*.

5

Our supreme court granted transfer and addressed Garrett's double jeopardy argument in pertinent part as follows:

> Garrett contends he was twice prosecuted for the same offense and thus his conviction violates the Double Jeopardy Clause of the Indiana Constitution which provides "[n]o person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. In *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999) this Court concluded that two or more offenses are the same offense in violation of article 1, section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Under the actual evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. *Id*. at 53. To find a double jeopardy violation under this test, we must conclude that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* The actual evidence test is applied to all the elements of both offenses. "In other words … the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).

> Our precedents "instruct that a 'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008) (citing cases). The reasonable possibility standard "fairly implements the protections of the Indiana Double Jeopardy Clause and also permits convictions for multiple offenses committed in a protracted criminal episode when the case is prosecuted in a manner that insures that multiple guilty verdicts are not based on the same evidentiary facts." *Richardson*, 717 N.E.2d at 53 n.46. The existence of a "'reasonable possibility' turns on a practical assessment of whether the [fact finder] may have latched on to exactly the same facts for both convictions." *Lee*, 892 N.E.2d at 1236. We evaluate the evidence from the jury's perspective and may consider the charging information, jury instructions, and arguments of counsel. *Id*. at 1234.

> As recounted earlier the Court of Appeals declined to address Garrett's *Richardson* double-jeopardy claim on grounds that the "actual evidence test does not apply to this case." *Garrett*, 965 N.E.2d at 122. In support the court

relied on *Buggs v. State*, 844 N.E.2d 195 (Ind. Ct. App. 2006), *trans. denied.…* [T]he Court of Appeals [in *Buggs*] noted that neither party cited to any case in which an Indiana appellate court had applied the actual evidence test in cases where there is an acquittal on one charge and retrial on another charge after a hung jury. The Court then noted "[i]n fact, our Supreme Court has made no indication that the actual evidence test is even used to determine whether two offenses are the same offense when there is an acquittal on one offense and retrial on another offense. Perhaps this is because there is already a recognized doctrine that applies to this situation, namely, collateral estoppel. Because of the availability of the doctrine of collateral estoppel, we choose not to extend the *Richardson* actual evidence test to this situation." *Buggs*, 844 N.E.2d at 201-02.

We make two observations. First, this Court has not heretofore been presented with, and thus has not had the opportunity to address, the precise question facing us today. Indeed as the Court of Appeals observed most double jeopardy claims and most Indiana reported decisions arise from defendants challenging two convictions, not retrial after an acquittal. *See id*. at 201 n.5. This does not mean however that Indiana Double Jeopardy analysis is inapplicable to assess whether two offenses are the same offense when there is an acquittal on one offense and retrial on another offense. Second, we are not persuaded that the availability of the doctrine of collateral estoppel forecloses applying Indiana Double Jeopardy analysis. The doctrine of collateral estoppel (also referred to as issue preclusion) is not the same as double jeopardy, "but rather is embodied within the protection against double jeopardy." *Coleman v. State*, 946 N.E.2d 1160, 1165 (Ind. 2011). "[T]he traditional bar of jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the crime." *Id*. (internal quotation omitted). Essentially the doctrine of collateral estoppel "precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Id*. (quoting *Yeager v. United States*, 557 U.S. 110, 119, 129 S. Ct. 2360, 174 L. Ed. 2d 78 (2009)).

In this case the Court of Appeals applied the doctrine of collateral estoppel and concluded it "did not bar relitigation of the second count of rape." *Garrett*, 965 N.E.2d at 123. *But see Richardson*, 717 N.E.2d at 68 n.23 (Boehm, J., concurring in result) (noting that the doctrine of collateral estoppel is of limited practical value "particularly if the first result is an acquittal, [because] the basis of the jury's ruling is often unascertainable"). Left unresolved is the question of whether Indiana Double Jeopardy is applicable to the facts before us. We answer this question in the affirmative.

First, "[t]he Double Jeopardy clause is assurance that the State will not be allowed to make *repeated attempts to convict* an accused for the same offense." *Thompson v. State*, 259 Ind. 587, 290 N.E.2d 724, 726 (1972) (citing U.S. Const. amend. V and XIV; Ind. Const. art. 1, § 14; *Benton v. Md.*, 395 U.S. 784, 796, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); *Green v. United States*, 355 U.S. 184, 187, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957)) (emphasis in original). Indeed, as we have recognized, the idea underlying the Double Jeopardy Clause's prohibition against multiple prosecutions "is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby … enhancing the possibility that even though innocent he may be found guilty." *State v. Monticello Developers, Inc.*, 527 N.E.2d 1111, 1112 (Ind. 1988) (quoting *Green*, 355 U.S. at 187–88, 78 S. Ct. 221). Having had one full opportunity to convict an accused, the State should not receive a "second bite at the apple." *See Burks v. United States*, 437 U.S. 1, 17, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978).

Second, "[t]he notion that 'jeopardy' is 'risk' is the very core of double jeopardy jurisprudence." *Bryant v. State*, 660 N.E.2d 290, 299 (Ind. 1995) (citing *Breed v. Jones*, 421 U.S. 519, 528, 95 S. Ct. 1779, 44 L. Ed. 2d 346 (1975)). Jeopardy is the risk of trial and conviction, not punishment. *Id.* (citing *Price v. Ga.*, 398 U.S. 323, 326, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970)). In other words, double jeopardy protection prohibits twice subjecting an accused to the risk that he will be convicted of a single crime. Therefore it is not surprising that we have previously recognized a double jeopardy violation where a defendant demonstrated "that he might have been acquitted or convicted on the former trial" of the same crime for which he was convicted at the second trial. *Brinkman v. State*, 57 Ind. 76, 79 (1877). Finally, we see no reason why the *Richardson* actual evidence test would not apply any time there are multiple verdicts, not simply multiple convictions, on the same facts. In fact, the plain language of the test refers not just to convictions: "[A] defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one *offense* may also have been used to establish the essential elements of a second challenged *offense*." *Richardson*, 717 N.E.2d at 53 (emphasis added).[1]

….

---

[1] We note, however, that the *Richardson* court also framed the actual evidence test as follows: "[T]wo or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence *used to convict*, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d at 49 (emphasis added).

Under our traditional formulation, in order to find a double-jeopardy violation pursuant to the *Richardson* actual evidence test, we must conclude there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson*, 717 N.E.2d at 53. As slightly modified, we hold today that a double jeopardy violation under the *Richardson* actual evidence test may also rest on our conclusion that there is a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of the offense for which the defendant was acquitted may also have been used to establish all of the essential elements of the offense for which the defendant was convicted.

We acknowledge that in a different factual context this modified test may prove challenging in its application. But here the facts are fairly straightforward. In essence on retrial the State presented the same evidence of Rape A—the first-in-time rape—on which the State relied in the first trial and upon which the jury found Garrett not guilty. And given the relative paucity of evidence on retrial concerning Rape B—the second-in-time rape—we conclude there is reasonable possibility that the evidentiary facts used by the jury in the first trial to establish the essential elements of Rape, for which Garrett was acquitted, may also have been used on retrial to establish all of the essential elements of Rape for which Garrett was convicted. We conclude therefore that Garrett was twice prosecuted for the same offense in violation of article 1, section 14 of the Indiana Constitution.

*Id*. at 719-723 (footnotes and citations to appendix and transcript omitted).

In his petition for rehearing, Harris contends that *Garrett* compels the dismissal of the

sexual misconduct charge based on the actual evidence test. He argues that

the State has already presented all of the same "actual evidence" in support of both counts. Because a retrial of Harris would necessarily require the admission of evidence that would be nearly identical to the evidence admitted in his first trial, the only possible method for Harris to be convicted at the second trial would be on the basis of "essentially the same evidence." Additionally, retrial of Harris would place him in jeopardy, that is the risk of trial and conviction for the exact same alleged conduct [i.e., the same act of sexual intercourse]. Thus, any retrial of Harris would necessary [sic] run afoul of Indiana Double Jeopardy.

Appellant's Pet. for Reh'g at 8-9.

In response, the State contends that

> *Garrett* does not dictate a different outcome in this case, and the actual evidence test does not prevent [Harris] from being retried.… Assuming that exactly the same evidence will be presented at [Harris's] second trial, it would still not be true that the evidence used to try to prove that [Harris] forced A.M. to have sex would establish all of the elements of sexual misconduct because A.M.'s age, which is essential to the sexual misconduct charge, was irrelevant to the rape charge. Whether in a single trial or multiple trials, the ultimate question remains whether [Harris] has been both acquitted and convicted of committing precisely the same acts. He has not.
>
> [Harris] was acquitted of forcing A.M. to have sex but if he is convicted following retrial it will be for engaging in unforced sex with A.M. while she was a minor. Though there is but one alleged act of sexual intercourse, the essential conduct that makes that sex criminal differs, and the jury's verdict on one does not dictate any conclusion about the other. If [Harris's] reasoning were to obtain, then no one could ever be acquitted of rape and convicted of either child molesting or sexual misconduct with a minor for the same sexual act even in the same trial. This is certainly not the case. It is reasonable and rational that a fact finder may conclude that sexual intercourse was not forced, thus not rape, but still criminal because of the age of the parties, and those verdicts would not offend the constitution. [Harris] does not claim that such verdicts reached in a single trial would violate double jeopardy or that he should never have been so charged in his original trial. He does not enjoy greater double jeopardy protections merely because the jury in his first trial was unable to reach a verdict on the sexual misconduct charge.

Appellee's Response to Appellant's Pet. for Reh'g at 2-4. We agree with the State's argument in all respects and decline Harris's invitation to reverse the trial court's denial of his motion to dismiss based on *Garrett*.[2]

---

[2] In his petition for rehearing, Harris focuses primarily on *Garrett* and the actual evidence test. The other double jeopardy cases cited by Harris involve the constitutional protection against multiple punishments for the same offense in a single trial, which is inapplicable here. To the extent he contends that he is entitled to relief based on collateral estoppel, we are unpersuaded for the reasons stated in our original opinion.

## II. State's Petition for Rehearing

The State cross-appealed the trial court's denial of its motion to amend the charging information by adding "or deviate sexual conduct" to the sexual misconduct charge. We addressed that issue as follows:

> In their briefs, the parties have characterized the matter as an issue of the trial court's discretion or abuse thereof, prosecutorial vindictiveness, double jeopardy, and the statute of limitations. We find the dispositive issue to be the statute of limitations.
>
> The period of limitations begins with the "commission of the offense." Ind. Code § 35-41-4-2(a)(1). The alleged crime occurred on December 25, 2005. A class C felony has a period of limitations of five years. Thus, the period of limitations regarding the alleged deviate sexual conduct ended on December 25, 2010. After the first trial, the State moved to amend its remaining count against Harris by adding "or deviate sexual conduct" on September 20, 2011, nearly a year after the period of limitations for the alleged deviate sexual conduct expired.
>
> The proposed amendment here is not merely a correction of information or an alternate theory of culpability, as the State suggests. Rather, the proposed amendment constitutes a matter of substance and includes a new and additional offense. Thus the amendment carries the weight and practical effect of a new or refiled charge. Just as the State would be barred from bringing a new or refiled charge of deviate sexual conduct, it is barred from bringing the charge through an amendment. The statute of limitations cannot be circumvented because of the procedural availability of amending informations or the happenstance of mistrial.
>
> The State's motion to amend by adding "or deviate sexual conduct" to the charge is untimely. As such, we conclude that the trial court did not abuse its discretion in denying the State's motion to amend the information prior to retrial on the hung count.

*Id*. at 893-94 (footnote and citations to brief omitted).

In its petition for rehearing, the State argues,

11

> [T]his Court fails to explain how this amendment alleges a distinct crime from the existing charge rather than simply a new theory of liability. This finding ignores that [Harris] still is only facing one count of sexual misconduct with a minor and is subject to liability for one count of sexual misconduct with a minor. Further, the Court does not explain why this case should be exempted from analysis under the usual rules governing pretrial amendments to the charging information. Properly applied, that analysis would show that the trial court abused its discretion by denying the State's motion to amend because the amendment would not cause any prejudice to [Harris's] substantial rights in this case.

Appellee's Pet. for Reh'g at 5.

The State's argument ignores the fact that it originally charged the deviate sexual conduct as a distinct crime from the sexual intercourse. The State then voluntarily dismissed the deviate sexual conduct charge. At Harris's trial, A.M. testified that Harris performed both deviate sexual conduct and sexual intercourse with her. Under these circumstances, the State's characterization of deviate sexual conduct as merely a "new theory of liability" rings hollow. The State cites no authority for the proposition that it may charge Harris for a crime committed outside the statute of limitations simply because it has the same name (sexual misconduct with a minor) as another crime for which he is being retried.[3] Consequently, we reaffirm the trial court's denial of the State's motion to amend the charging information.

ROBB, C.J., and FRIEDLANDER, J., concur.

---

[3] Nor does the State contend that dismissing a charge tolls the statute of limitations for that crime.